UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LILA DERBY,

                                        Plaintiff,

v.                                                              5:04-CV-0349
                                                                (TJM/GHL)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

APPEARANCES:                                        OF COUNSEL:

OLINSKY & SHURTLIFF                          JAYA A. SHURTLIFF, ESQ.
*Counsel for Plaintiff*
300 S. State Street
5th Floor
Syracuse, New York 13202


HON. GLENN T. SUDDABY                        WILLIAM H. PEASE, ESQ.
United States Attorney for the              Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198


GEORGE H. LOWE, United States Magistrate Judge

### REPORT AND RECOMMENDATION[1]

## I.    BACKGROUND

### A.    Procedural History

Lila Derby ("Plaintiff") filed an application for supplemental security income benefits

_____

[1]       This matter was referred to me for Report and Recommendation by the Honorable
Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and
Northern District of New York Local Rule 72.3.

("SSI") on October 22, 1999.  (Administrative Transcript ("T") at 131-143.)  The application was denied initially on December 30, 1999.  (T. at 78-81.)  Plaintiff filed a request for reconsideration on February 24, 2000 (T. at 82-84), which was denied on April 18, 2000 (T. at 85-87.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and one was held on September 13, 2000.  (T. at 22-49.)  On December 26, 2000, ALJ Joseph G. Medicis, Jr. issued a decision finding that Plaintiff was not disabled.  (T. at 101-108.)

Plaintiff appealed to the Appeals Council, and the Appeals Council remanded the matter for another hearing (T. at 114-116), which was held on December 5, 2001 (T. at 50-75.)  ALJ Medicis issued a second unfavorable decision on June 19, 2002.  (T. at 15-21.)  This decision became the final decision of the Commissioner of Social Security ("Defendant") when the Appeals Council denied Plaintiff's request for review on January 30, 2004.  (T. at 7-10.)  Plaintiff commenced this action on March 29, 2004.  (Dkt. No. 1.)

**B.      The Contentions**

Plaintiff makes the following claims:

1.      At the hearing before the ALJ on December 5, 2001, Plaintiff did not make a knowing and voluntary waiver of her right to counsel and, as a result, Plaintiff was prejudiced and denied a full and fair hearing because of the lack of representation.  (Dkt. No. 9 at 8-11.)

2.      The ALJ erred in finding that Plaintiff's mental impairments were not severe.  (Dkt. No. 9 at 12-14.)

3.      The ALJ erred in finding that Plaintiff's upper right arm impairments did not establish a medically determinable impairment.  (Dkt. No. 9 at 14.)

4.      The ALJ erred in finding that Plaintiff's neck impairment was not severe.  (Dkt.

2

No. 9 at 14-15.)

5.      The ALJ erred in finding that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work.  (Dkt. No. 9 at 15-17.)

6.      Because Plaintiff had non-exertional impairments, as well as exertional ones, the ALJ erred in relying on the Medical-Vocational Guidelines (the "Grid") to find that Plaintiff was not disabled.  (Dkt. No. 9 at 17-18.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed.  (Dkt. No. 12.)

## II.      APPLICABLE LAW

### A.      Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

3

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1) (2006)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. §§ 404.1520, 416.920 (2006). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs

which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

**B.      Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2006); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE PLAINTIFF

Plaintiff was born on April 24, 1957.  (T. at 131.)  She obtained her GED (T. at 160) and has no prior relevant work experience (T. at 155).  Plaintiff alleges disability due to tendinitis in her right elbow, carpal tunnel syndrome in both wrists, arthritis, degenerative disc disease in her neck, depression, anxiety, and pain in her back and chest.  (T. at 154, Dkt. No. 9 at 3-5.)

## IV.    THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff had never engaged in substantial gainful activity (T. at 20); (2) Plaintiff had an impairment or combination of impairments that were severe but did not meet or medically equal one of the impairments listed in Appendix 1 to Subpart P of Part 404 (*Id.*); (3) Plaintiff's allegations regarding her limitations were not totally credible (*Id.*); (4) Plaintiff had the RFC to lift or carry twenty pounds occasionally and ten pounds frequently, and to sit, stand, or walk for approximately six hours in an eight-hour day (*Id.*); (5) Plaintiff had the RFC to perform the full range of light work (T. at 21.); and (6) Rule 202.20 of the Grid directed a finding that Plaintiff was not disabled (*Id.*).

**V.      DISCUSSION**

     **A.      Whether Plaintiff Made a Knowing and Voluntary Waiver of Her Right to Counsel**

Claimants have a statutory right to notification of their options for obtaining legal representation in SSI and disability insurance benefit claims.  42 U.S.C. §§ 406(c), 1383(d)(2)(B) (2006) ("The Commissioner of Social Security shall notify each claimant in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security.  Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge.").  *See also* 20 C.F.R. §§ 404.1706, 416.1506 (2006) (". . . We will include with the notice of that determination or decision information about your options for obtaining an attorney to represent you in dealing with us.  We will also tell you that a legal services organization may provide you with legal representation free of charge if you satisfy the qualifying requirements applicable to that organization.").  "Once a claimant is provided with adequate notice of his right to counsel, he may effectively waive the option to proceed with counsel in writing or orally before the judge." *Vaughn v. Apfel*, No. 98Civ.0025(HB), 1998 WL 856106, at *4 (S.D.N.Y. Dec. 10, 1998) (citing *Frank v. Chater*, 924 F. Supp. 416, 423 (E.D.N.Y. 1996)).  *See also Osorio v. Barnhart*, No. 04 Civ. 7515 (DLC), 2006 WL 1464193, at *8 (S.D.N.Y. May 30, 2006).

Even if an ALJ does not sufficiently inform a plaintiff of his/her rights, the lack of counsel, in and of itself, is not a sufficient ground upon which remand or reversal may be based. *Alvarez v. Bowen*, 704 F. Supp. 49, 53 (S.D.N.Y. 1989).  Plaintiff must show prejudice or

unfairness in the proceeding.  *See Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 142 (1st Cir. 1987); *Osorio*, 2006 WL 1464193, at *9; and *Colondres v. Barnhart*, No. 04 Civ. 1841 (SAS), 2005 WL 106893, at *5 (S.D.N.Y. Jan. 18, 2005).

### 1.      Plaintiff's First Hearing

Prior to her first hearing on September 13, 2000, the ALJ sent Plaintiff a letter, dated July 18, 2000, describing the hearing process and what she could do to prepare for the hearing.  (T. at 89-93.)  The letter informed Plaintiff of her right to be represented by an attorney or other representative of her choice, and enclosed a publication entitled "Your Right To Representation" which provided answers to some frequently asked questions.  (T. at 89-91.)  Also enclosed was a list of agencies which provided legal services.  (T. at 93.)

At Plaintiff's first hearing on September 13, 2000, the ALJ informed Plaintiff of her right to have counsel or a representative present:

> ALJ:   Now, I also find out that while you must admit, if you will, and you can say, no I don't agree with you, Judge, that you've been notified when you first filed your application that you had a right to a lawyer or representative of your choice?
>
> Clmt:  Yes, I do.
>
> ALJ:   And you will also admit [INAUDIBLE] that when we acknowledge that you had a request for hearing in this office back in July that we advised you, told you where to go to legal aide, et cetera, is that right?
>
> Clmt:  Yes, You did.
>
> ALJ:   And you are not here with any representative and so I have to ask you whether you're ready to proceed today with the knowledge that you would be waiving your right for representation for this hearing only, not for any other time?

Clmt:  Yes, I am.

ALJ:   You understand that?

Clmt:  Yes.

ALJ:   Okay.  I always have to tell you that because I want you to
       understand we're not going to provide representatives . . . .
       So I'm going to proceed based on what you've told me and
       your understanding of your rights.

(T. at 24-25.)

### 2.     Plaintiff's Second Hearing

Prior to her second hearing on December 5, 2001, before the same ALJ, the ALJ sent

Plaintiff a letter, dated August 15, 2001, advising that her case had been assigned to him upon

remand by the Appeals Council.  (T. at 117.)  The letter was similar to the one sent to Plaintiff on

July 28, 2000.  It informed Plaintiff of her right to be represented by an attorney or other

representative of her choice and again enclosed the publication entitled "Your Right To

Representation."  (T. at 118-119.)  Also enclosed was a list of agencies which provided legal

services (T. at 120) and a notice which stated that the ALJ's records indicated Plaintiff was

unrepresented and that if she intended to obtain representation to do so immediately, and if she

did not, to complete, sign, and return the "Waiver of Right to Representation" form.  (T. at 121-

122.)  No signed form appears in the Administrative Transcript, so it appears that Plaintiff did

not waive her right to representation in writing.

Nonetheless, a claimant may also effectively waive his/her right to counsel on the record

before the ALJ at his/her hearing.  *Frank*, 924 F. Supp. at 423.  However, unlike her first hearing,

the ALJ did not make any inquiry into whether Plaintiff wanted to proceed without counsel at the

9

second hearing.  (T. at 50-75.)  He probably felt that such an inquiry, for a second time, was

unnecessary, especially since Plaintiff, for a second time, had been provided with written

notification of her right to representation.  Plaintiff argues, nevertheless, that she did not make a

knowing and voluntary waiver of her right to representation.  If this were the only error, the

Court would be highly reluctant to recommend remand on the issue.  However, since remand on

other issues is being recommended, the Court simply will note that should there be another

hearing, the ALJ should assure that Plaintiff, if not represented, waives her right to representation

in writing or does so on the record at the hearing.

**B.      Whether the ALJ Erred in Finding That Plaintiff's Mental Impairments
            Were Not Severe**

With regard to Plaintiff's anxiety, the ALJ found that because Plaintiff "has not sought

further treatment and does not seem interested in pursuing such treatment, her complaints of

anxiety must not be as severe as she once alleged.  Therefore, this medically determinable

impairment is considered non-severe."  (T. at 17.)  Plaintiff argues that the ALJ erred in this

regard.  Specifically, Plaintiff argues that the ALJ screened out Plaintiff's anxiety claim at step

two of the sequential evaluation and this was improper because, at step two, only *de minimis*

claims may be screened out.  (Dkt. No. 9 at 12.)  Furthermore, Plaintiff contends that because the

ALJ improperly screened out her anxiety claim at step two, it follows that the ALJ could not have

properly considered the combined impact of all of Plaintiff's impairments, including her anxiety,

throughout the remaining steps of the sequential evaluation process.  (*Id.*)

Plaintiff is correct in stating that it is well-established that at step two of the sequential

evaluation process, only *de minimis* claims may be screened out.  *See Dixon v. Shalala*, 54 F.3d

10

1019, 1030 (2d Cir. 1995); *Snipe v. Barnhart*, No. 05 Civ. 10472, 2006 WL 2390277, at *12 (S.D.N.Y. Aug. 21, 2006); *Papp v. Comm'r of Soc. Sec.*, No. 05 Civ. 5695, 2006 WL 1000397, at *13 (S.D.N.Y. Apr. 18, 2006); and *Antonetti v. Barnhart*, 399 F. Supp. 2d 199, 203 (W.D.N.Y. 2005). *See also* 20 C.F.R. §§ 416.920(a)(4)(ii), (c) and Social Security Ruling ("SSR") 85-28. In the instant case, the ALJ determined that Plaintiff's anxiety claim was not severe, he apparently did so at step two of the sequential evaluation process, and as a result he presumably did not consider anxiety in the remaining steps of the sequential analysis.

The record does not contain substantial evidence supporting the ALJ's determination that Plaintiff's anxiety claim was *de minimis*. Indeed, the record reflects that Plaintiff attended counseling at the Cayuga County Mental Health Center from February 1998 through May 1998. (T. at 223-226.) Her case was closed on June 29, 1998 due to lack of contact, then reopened on August 5, 1998. (T. at 223, 224.) Cayuga County Mental Health next closed her case in November 1998. (T. at 224.) She was then followed by a nurse practitioner from East Hill Family Medical Center from April 1999 through January 2000, who repeatedly noted Plaintiff's depression and need for long-term therapy. (T. at 246, 248.) On March 13, 2001, Plaintiff called the Cayuga County Mental Health Center. (T. at 322.) The health center's intake notes read, "Very nervous – needs to see someone or she's going to have a nervous breakdown . . . ." (*Id.*) Plaintiff advised that she had had difficulty attending counseling sessions because she did not have money for gas or a bus. (*Id.*) On August 9, 2001, Plaintiff contacted the Cayuga County Mental Health Center, asking for help. (T. at 323.) The intake notes reveal suicidal ideation but no suicide plan. (*Id.*) Notes dated September 21, 2001 indicated a diagnosis of dysthymia. (T. at 329.)

Against this not insignificant showing of at least a *de minimis* claim of a mental

impairment, the ALJ posited Plaintiff's "seem[ing lack of] interest[] in pursuing . . . treatment."

(T. at 17.)  However, an ALJ

> must not draw any inference about an individual's symptoms and
> their functional effects from a failure to seek or pursue regular
> medical treatment without first considering any explanations that
> the individual may provide, or other information in the case record,
> that may explain infrequent or irregular medical visits or failure to
> seek medical treatment.  The adjudicator may need to recontact the
> individual or question the individual at the administrative
> proceeding in order to determine whether there are good reasons
> the individual does not seek medical treatment or does not pursue
> treatment in a consistent manner.  The explanations provided by
> the individual may provide insight into the individual's credibility.
> For example:
>> * The individual's daily activities may be structured
>> so as to minimize symptoms to a tolerable level or
>> eliminate them entirely, avoiding physical or mental
>> stressors that would exacerbate the symptoms.  The
>> individual may be living with the symptoms, seeing
>> a medical source only as needed for periodic
>> evaluation and renewal of medications.
>> * The individual's symptoms may not be severe
>> enough to prompt the individual to seek ongoing
>> medical attention or may be relieved with over-the-
>> counter medications.
>> * The individual may not take prescription
>> medication because the side effects are less
>> tolerable than the symptoms.
>> * The individual may be unable to afford treatment
>> and may not have access to free or low-cost medical
>> services.
>> * The individual may have been advised by a
>> medical source that there is no further, effective
>> treatment that can be prescribed and undertaken that
>> would benefit the individual.
>> * Medical treatment may be contrary to the teaching
>> and tenets of the individual's religion.

SSR 96-7p, 1996 WL 374186, at *7.  Remand is recommended so that the Defendant can more

fully explore whether Plaintiff's anxiety claim should be rejected based upon her failure to seek

or pursue regular treatment.

     **C.**     **Whether the ALJ Erred in Finding That Plaintiff's Upper Right Arm Symptoms and Complaints Did Not Establish a Medically Determinable Impairment**

     Plaintiff articulated this issue as concerning her "right upper arm complaints." (Dkt. No.

9 at 14.)  The Defendant, perhaps understandably, focused his responsive argument on the issue

as articulated.  Yet in fact Plaintiff's claim of error appears to address the ALJ's finding that "the

diagnosis of right carpal tunnel syndrome was eliminated through nerve conduction tests in

February 2000," and therefore "the right upper extremity complaints do not establish a medically

determinable impairment." (T. at 17.)  The connection between carpal tunnel syndrome and

upper arm complaints is unclear to the Court.  Regardless, the record does not support the ALJ's

finding that "the diagnosis of right carpal tunnel syndrome was eliminated through nerve

conduction tests in February 2000" (T. at 17), and therefore remand is necessary.

     The ALJ did not provide a citing reference to the claimed nerve conduction tests,

performed in February of 2000, which purportedly "eliminated" Plaintiff's diagnosis of right

carpal tunnel syndrome.  However, earlier in the same paragraph, the ALJ refers to an

"electromyography [which] showed only mild right carpal tunnel syndrome in February 2000."

(*Id.*)  After reviewing the other exhibits cited by the ALJ (Exhibits 3F, 4F, and 6F),[2] I infer that

---

     [2]     Exhibit 3F consists of notes regarding Plaintiff's office visits with Thomas J. Sullivan, M.D. spanning March 9, 1999 through March 8, 2000.  (T. at 258-259.)  Exhibit 4F consists of a report regarding an internal medicine examination conducted by Richard Weiskopf, M.D. on November 10, 1999 (T. at 260-263) and the results of a lumbar sacral spine x-ray (T. at 264.)  Exhibit 6F consists of the results of various nerve conduction tests and the report by David R. Reich, M.D (T. at 273-275.)

he must have been relying on the nerve conduction studies performed by David R. Reich, M.D. on February 2, 2000. (T. at 273-275.)  Significantly, in his "Conclusion" section, Dr. Reich found that Plaintiff had "[m]ild right-sided CTS."[3]  (T. at 275.)  This establishes, not "eliminates," the presence of carpal tunnel syndrome on Plaintiff's right side.  To the extent that the ALJ ruled out Plaintiff's carpal tunnel syndrome as an impairment based upon the February, 2000 nerve conduction tests, this was erroneous.

There is other evidence in the record that establishes the existence of carpal tunnel syndrome.  On July 29, 1999, Dr. Sullivan stated: "My impression is that Lila has a carpal tunnel syndrome in both hands . . . ."  (T. at 259.)  At a follow up appointment on September 29, 1999, Dr. Sullivan noted that the symptoms of Plaintiff's carpal tunnel syndrome were somewhat alleviated with splinting.  (*Id.*)  He also noted that Plaintiff's carpal tunnel syndrome symptoms did not appear significant enough as to warrant any EMG and nerve conduction studies.  (*Id.*)  However, in December of 1999, she reported numbness and tingling in both hands and Dr. Sullivan recommended EMG and nerve conduction studies.  (*Id.*)  At an appointment following the studies in 2000, Dr. Sullivan reviewed the results and stated they were positive for mild carpal tunnel syndrome.  (T. at 313.)

Dr. Weiskopf examined Plaintiff on November 10, 1999.  (T. at 260.)  Upon physical examination, Dr. Weiskopf found that three fingers on Plaintiff's right hand had decreased sensation and his impressions included "carpal tunnel syndrome, by history, right wrist."  (T. at 263.)  Fatme Allam, M.D. examined Plaintiff on March 25, 2002 and found that Plaintiff had "a

---

[3]     Plaintiff and Defendant interpret Dr. Reich's "CTS" notation to be an abbreviation for carpal tunnel syndrome.  (Dkt. No. 12 at 32, Dkt. No. 9 at 14.)

component of carpal tunnel syndrome bilaterally."  (T. at 355.)

Remand is necessary for the Defendant to properly assess Plaintiff's carpal tunnel syndrome.

**D.     Whether the ALJ Erred in Finding That Plaintiff's Neck Impairment Was Not Severe**

Plaintiff asserts that the ALJ erroneously found that Plaintiff's neck impairment was not severe because there were no treatment notes involving neck pain.  (Dkt. No. 9 at 14-15.)  The ALJ stated that "[t]he claimant also complained of low back pain and neck pain in her application for disability.  There are no treatment notes involving neck pain."  (T. at 17.)  The ALJ then seemed to exclude Plaintiff's complaints of neck pain from consideration.

To the extent that the ALJ excluded Plaintiff's complaints of neck pain as not severe[4] solely because "[t]here are no treatment notes involving neck pain," this was erroneous.  The transcript does in fact contain records that pertain to Plaintiff's neck pain.  For example, on November 29, 1996, the radiology department of Auburn Memorial Hospital issued a report documenting the results of x-rays of Plaintiff's cervical spine.  (T. at 252.)  Although there was no evidence of fracture or dislocation, there was congenital fusion of the C2 and C3 vertebra and "minimal anterior marginal vertebral body osteophytic spurring at C4-5, C5-6, and C6-7 compatible with early degenerative disc disease."  (*Id.*)

Furthermore, Plaintiff was examined by Dr. Weiskopf on November 10, 1999, who noted that Plaintiff's complaints included, *inter alia*, neck pain which began three to four years ago.  (T.

---

[4]     "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a), 416.921(a) (2006).

at 260.)  Plaintiff described the pain as "sharp or dull and is nonradiating." (*Id.*)  Dr. Weiskopf's

impression included chronic neck pain.  (*Id.*)

Plaintiff was examined by Dr. Allam on March 25, 2002 for a rheumatology initial visit.

(T. at 353-355.)  Plaintiff complained of a history of neck pain for seven years.  (T. at 353.)  She

stated that she was having problems when she rotated her neck and had undergone physical

therapy and pain treatment without much improvement.  (*Id.*)  Dr. Allam noted Plaintiff's

congenital fusion of the C2-C3 vertebrae and neural foraminal encroachment on the C4-C5 and

C6-C7 levels.  (*Id.*)  Upon a musculoskeletal examination, Dr. Allam found that Plaintiff had "a

severely stiff neck with severe decrease in the range of motion because of pain."  (T. at 354.)  His

assessment included cervical spine degenerative joint disease and that because physical therapy

and pain management had failed, there might be a need to assess whether surgical intervention

was necessary.  (T. at 355.)  Specifically, Dr. Allam noted that "the orthopedist has sent her for

an MRI of the cervical spine."  (*Id.*)

Approximately one month later, Dr. Allam saw Plaintiff for a follow-up visit in which her

main concern was her neck pain.  (T. at 356.)  While Dr. Allam did not have a copy of the results

of Plaintiff's MRI, he noted that Plaintiff was told that it was "okay" (T. at 357) and there was no

cord compression and no need for surgery (T. at 356.)  Upon physical examination, Dr. Allam

found a mild to moderate decrease in the range of motion of Plaintiff's neck.  (*Id.*)  Dr. Allam's

impression included "[d]egenerative joint disease of the C-spine secondary to C2-C3 fusion

followed up by Orthopaedics.  MRI done recently and we do not know the official report, but the

patient was told it was okay."  (T. at 357.)

Based upon the foregoing, it was erroneous for the ALJ to exclude Plaintiff's neck pain as

16

non-severe based solely upon the lack of treatment notes.  The above-mentioned evidence shows

that Plaintiff had congenital fusion of vertebrae in her neck and suffered from and was treated for

neck pain.  Accordingly, the ALJ should have analyzed whether this neck pain significantly

limited Plaintiff's physical or mental ability to do basic work activities, pursuant to 20 C.F.R. §§

404.1521(a), 416.921(a).

> **E.     Whether the ALJ Erred in Finding That Plaintiff Had the RFC to Perform
> the Full Range of Light Work**

Plaintiff's fifth argument is that the ALJ failed to comply with SSR 96-8p when he

determined that Plaintiff had the RFC to perform light work.  (Dkt. No. 9 at 15-17.)  Specifically,

Plaintiff argues that the RFC Assessment upon which the ALJ based his opinion did not take into

consideration Plaintiff's back and neck impairments, obstructive airway disease, or heart

impairment.  (Dkt. No. 9 at 16.)  Pursuant to SSR 96-8p, all alleged impairments must be

considered, even those that are not severe, thus Plaintiff argues the ALJ erred in relying upon the

RFC Assessment which failed to consider certain of Plaintiff's alleged impairments.  (*Id.*)

The ALJ found that Plaintiff was able to: lift or carry twenty pounds occasionally and ten

pounds frequently and sit, stand, or walk for approximately six hours out of an eight hour day.

(T. at 19.)  This RFC is consistent with light work.  20 C.F.R. §§ 404.1567(b), 416.967(b).  In

reaching this conclusion regarding Plaintiff's RFC, the ALJ relied upon the opinions of Drs.

Weiskopf and Battaglia,[5] and the RFC Assessment completed by Dr. Gajwani, a non-examining

physician.  (T. at 18.)

The Court is not entirely persuaded by Plaintiff's argument that Dr. Gajwani only

---

[5]     Dr. Battaglia's opinion consists of the following notation, written on a form used for prescriptions: "Limited standing No bending No lifting > 20#."  (T. at 330.)

considered carpal tunnel syndrome, elbow tendinitis, and esophagitis when rendering the opinions contained in the RFC Assessment.  When asked about the evidence that supported the conclusions regarding Plaintiff's exertional limitations, Dr. Gajwani wrote "pain ® wrist, low back" (T. at 277) which evidences Dr. Gajwani's consideration of record(s) regarding Plaintiff's low back pain.

However, Dr. Gajwani's RFC Assessment could not have taken Plaintiff's obstructive airway disease into consideration because the pulmonary laboratory's results of November 7, 2001 (T. at 344-345) post-date Dr. Gajwani's RFC Assessment.  In other words, although the ALJ relied on the pulmonary laboratory's results and assessment of "moderately severe obstructive airways disease," Dr. Gajwani could not have considered this when rendering his opinions regarding Plaintiff's RFC because the pulmonary tests had not yet been conducted at the time of Dr. Gajwani's RFC Assessment.[6]

Finally, with regard to Plaintiff's heart impairment, SSR 96-8p states that "in assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments."  SSR 96-8p.  The Court notes that the transcript raises some question as to whether Plaintiff's alleged heart impairment constitutes a "medically determinable impairment" because there is a difference in the opinions of those who treated Plaintiff as to whether Plaintiff's chest pain was due to a heart ailment or related to anxiety and/or esophagitis. (T. at 237, 239, 241, 245; *cf.* 263.)

Although the Court is not entirely persuaded of Plaintiff's position (that Dr. Gajwani

---

[6]     Plaintiff does not point to any other evidence of her moderately severe obstructive airway disease.

ignored Plaintiff's back pain, obstructive airway disease, and heart impairment when rendering

the opinions set forth in the RFC Assessment), upon receiving the more recent evidence (T. at

332-345), which included the pulmonary laboratory's results, the ALJ should have considered

whether another, more recent RFC Assessment, which would take the additional evidence into

consideration, was necessary.  SSR 96-8p states:

> The adjudicator must consider all allegations of physical and
> mental limitations or restrictions and make every reasonable effort
> to ensure that the file contains sufficient evidence to assess RFC.
> Careful consideration must be given to any available information
> about symptoms because subjective descriptions may indicate more
> severe limitations or restrictions than can be shown by objective
> medical evidence alone.
>
> In assessing RFC, the adjudicator must consider limitations and
> restrictions imposed by all of an individual's impairments, even
> those that are not "severe."  While a "not severe" impairment(s)
> standing alone may not significantly limit an individual's ability to
> do basic work activities, it may – when considered with limitations
> or restrictions due to other impairments – be critical to the outcome
> of a claim.

SSR 96-8p.  The ALJ was clearly aware of the pulmonary laboratory's report, as evidenced by his

citation to Plaintiff's diagnosis of moderately severe obstructive airway disease and his finding

that this constituted a "severe" impairment.  (T. at 17.)  Nonetheless, in determining that Plaintiff

was capable of performing the full range of light work, the ALJ relied upon an RFC Assessment

which could not have taken the obstructive airway disease into consideration.  Because the RFC

Assessments in the record, specifically the one relied upon by the ALJ in determining Plaintiff's

RFC, do not seem to consider "limitations and restrictions imposed by all of an individual's

19

impairments, even those that are not 'severe,'" remand is recommended.[7]

    **F.    Whether the ALJ Erred in Relying on the Grid**

    Finally, Plaintiff contends that the ALJ erred in relying upon the Grid, which directed a finding of not disabled.  (Dkt. No. 9 at 17.)  Because the Court has recommended remand regarding Plaintiff's RFC, remand must be recommended regarding the use of and reliance upon the Grid.  Depending on a claimant's RFC, a different table of the Grid is used in determining whether a claimant is or is not disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Table Nos. 1, 2, 3.  Upon remand, the ALJ shall re-evaluate Plaintiff's RFC and apply the Grid if it is applicable.

    **WHEREFORE,** it is hereby

    **RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[8] for further proceedings consistent with the above.

    Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE**

---

    [7]    The Court notes that there is another RFC Assessment completed by a non-examining physician whose signature is illegible.  (T. at 265-272.)  This physician stated that Plaintiff's primary and secondary diagnosis and other alleged impairments were: carpal tunnel in her right wrist, elbow tendinitis, and depressive disorder, respectively.  (T. at 265.)  In addition, when asked about the evidence that supported the conclusions with regard to Plaintiff's exertional limitations, the physician noted Plaintiff's back and chest pain.  The Court notes that this physician's RFC Assessment also could not have taken into consideration the evidence cited by the ALJ regarding moderately severe obstructive airway disease (T. at 344) because the RFC Assessment pre-dates the pulmonary laboratory's results, which were rendered on November 7, 2001.

    [8]    Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (2005); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 19, 2007
      Syracuse, New York

                                      George H. Lowe
                                      United States Magistrate Judge